

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## MCALLEN DIVISION

**ENTERED**
**11/25/2014**

| | | |
|---|---|---|
| IN RE: | § | |
| OCEAN TOWER LP | § | **CASE NO: 11-70776** |
| Debtor(s) | § | |
| | § | **CHAPTER 7** |
| | § | |
| MICHAEL B SCHMIDT, TRUSTEE | § | |
| Plaintiff(s) | § | |
| | § | |
| VS. | § | **ADVERSARY NO. 13-07026** |
| | § | |
| ANTUN T. DOMIT, *et al* | § | |
| Defendant(s) | § | |

## <u>MEMORANDUM OPINION</u>

Michael B. Schmidt, the Chapter 7 Trustee for Ocean Tower, LP has sued to recover assets transferred from the Ocean Tower prior to the commencement of Ocean Tower's bankruptcy case. Antun Domit, Maria De Los Angeles Domit, Godinez Office Center, L.P., and South Ware Industrial, L.P. have filed several motions to dismiss for failure to state a claim. The motions to dismiss are denied.

### Factual Background

Antun Domit is a businessman and real estate developer. (ECF No. 32-1 at 1). Domit and his wife Maria Domit are the majority owners of Ocean Tower, although the exact ownership percentage is unclear.[1] (ECF No. 1 at 3). In 2006, Ocean Tower began the development of a 31-story luxury condominium project in South Padre Island, Texas. *Id.* Due to either settlement of the foundation or faulty construction of the tower, the building began to lean significantly while under construction. *Id.* Construction halted in 2008 and the building was demolished in 2009. (ECF No. 32-1 at 2). The demise of the tower resulted in litigation, which

---

[1] Schmidt alleges that Antun and Maria each own 49.5% of the partnership, while Maria claims that Antun owns 75% and she owns 25%. (ECF No. 14 at 9).

eventually settled in 2009. (ECF No. 1 at 3). As a result of the settlement, Ocean Tower received a net payment of $3,585,131.92. *Id.*

Prior to the construction and subsequent demolition of the tower, Antun filed for divorce from his wife on May 9, 2006 in Hidalgo County, Texas. (ECF No. 32-1 at 1). On November 18, 2008, the state court appointed David Calvillo, a local attorney, as the Receiver for the Marital Estate. (ECF No. 1 at 2). The order required the receiver to "take charge and possession of the business property and entities" and to "manage, control, and dispose of the property as he sees fit in his sole discretion." (ECF No. 6-1 at 12). A disbursing agent for Ocean Tower paid to Calvillo the $3,585,131.92 received from 2009 settlement, which Calvillo deposited in a Receivership Account at Inter National Bank. (ECF No. 1 at 3). The Trustee alleges that 82% of all funds deposited into the Receivership Account originated from the Ocean Tower settlement. *Id.*

From February 24, 2009 through February 8, 2012 Calvillo disbursed a total of $629,464.72 from the Receivership Account to Antun and Maria Domit for personal and family support.[2] *Id.* Calvillo also transferred $46,029.68 to Godinez Office Center, L.P. from January 7, 2010 through April 5, 2011. *Id.* From September 30, 2009 through June 30, 2010 he transferred $19,111.42 to five entities which operate apartment complexes collectively referred to as Las Misiones Apartments.[3] *Id.* From November 13, 2009 through March 15, 2011 Calvillo transferred $40,981.79 to South Ware Industrial, L.P. *Id.* Each of these additional transfers was made from the same Receivership Account.

---

[2] Antun and Maria collectively were paid $293,695.60 for family support. Antun received an additional $102,249.90 for personal support while Maria received $233,519.22 for personal support.

[3] The three entities are Las Misiones at the Grove, L.P.; Las Misiones Apts, L.L.C.; Las Misiones at the Grove, Apts. Ph. II, L.P; Las Misiones at the Grove Plaza, L.P.; and Las Misiones Apts, L.P.

On November 29, 2011 several purchasers of condominiums in the demolished tower filed an involuntary petition forcing Ocean Tower into Chapter 7 bankruptcy. (Case No. 11-70776; ECF No. 1). Michael Schmidt became the Trustee over Ocean Tower's estate. On November 22, 2013 Schmidt filed this adversary proceeding against Antun and Maria Domit, Las Misiones Apartments, Godinez Office Center, and South Ware Industrial. The complaint alleged that Ocean Tower made fraudulent transfers to the Defendants under § 548 of the Bankruptcy Code as well as the Texas Uniform Fraudulent Act ("TUFTA"). In response, several defendants have filed four separate motions to dismiss. (ECF Nos. 6, 16, 31, 32). All of the motions to dismiss argue that because Calvillo transferred the funds pursuant to a state court order, they are protected against any fraudulent transfer action.

### Rule 12(b)(6) Standard

The Movants' motions to dismiss for failure to state a claim for which relief can be granted are filed under Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) is incorporated into bankruptcy procedural rules by Fed. R. Bankr. P. 7012(b). The Court reviews motions under Rule 12(b)(6) by "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs." *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007) (per curiam). The Court must determine "in the light most favorable to the plaintiff, whether the complaint states any valid claim for relief." *Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir. 1994). However, the Court "will not strain to find inferences favorable to the plaintiff." *Southland Sec. Corp. v. INSpire Ins. Solutions Inc.*, 365 F.3d 353, 361 (5th Cir. 2004) (internal quotations omitted).

Fed. R. Civ. P. 8(a)(2) requires a plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief." In order to survive a Rule 12(b)(6) motion, the complaint must "contain enough factual matter (taken as true)" to "raise [the] right to relief

above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).  The well-pleaded facts must "permit the court to infer more than the mere possibility of misconduct." *Aschroft v. Iqbal*, 556 U.S. 662 (2009).  "Only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* (citing *Twombly*, 550 U.S. at 556).  A complaint does not need to provide detailed factual allegations, "but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that . . . raise a right to relief above the speculative level." *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th. Cir. 2009) (internal quotation marks omitted).

## Analysis

### Collateral Attack

The Movants argue that the complaint is an impermissible collateral attack against the November 18, 2008 state court order appointing a receiver and must be dismissed.  According to the Movants, if this Court hears the fraudulent transfer claims, it would be exercising appellate review over the state court order allowing the receiver to manage the property "as he sees fit." The collateral attack doctrine stands for the proposition that "it is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decisions are to be respected." *Celotex Corp. v. Edwards*, 514 U.S. 300, 313 (1995).  "Final orders, of forfeiture or other relief, are not subject to collateral attack."  *Uecker & Assoc., Inc. v. L.G. Hunt & Assoc., Inc. (In re The Am. Basketball League, Inc.)*, 317 B.R. 121, 127 (Bankr. N.D. Cal. 2004); *see also In re Allison*, 2006 WL 2620480 at * 10 (Bankr. S.D. Tex. Sep. 12, 2006) ("[A] final judgment is protected from collateral attack.").  Interlocutory orders, however, are not subject to the same protections.  *See Duggan v. Sansbury*, 327 U.S. 499, 509 (1949) (stating that where

final judgment had not been entered, a bankruptcy proceeding could be attacked collaterally in a different forum); *Gehm v. United States*, 83 F. Supp. 1003, 1005 (S.D.N.Y. 1949) (holding that a divorce decree was protected against collateral attacks only once it became a final order).

The receivership order in question was interlocutory and is therefore subject to collateral attack.  Texas has recognized an exception to the one final judgment rule for discrete orders in receiverships.[4]  *Art Inst. of Chi. v. Integral Hedging, L.P.*, 129 S.W.3d 564, 570-71 (Tex. App. 2003).   Ordinarily, a court order approving a final account and dismissing the receiver is considered the final judgment over the receivership.  *See Jordan v. Burbach*, 330 S.W.2d 249, 251 (Tex. Civ. App. 1959).   The exception to the one final judgment rule recognizes that a receivership is often an ongoing process where the rights of parties are determined by various court orders over an extended period of time.  *Bergeron v. Session*, 554 S.W.2d 771, 774-75 (Tex. Civ. App. 1977).   Individual orders can be considered final if they "finally dispose of all issues in a discrete part or phase of the receivership."  *Integral Hedging*, 129 S.W.3d at 572.  The exception is "narrow."  *Id.* at 571.

After examining the language of the receivership order, it is apparent that the order does not finally dispose of any issues in a part or phase of the receivership.  The pertinent part of the order states in full that:

> It is therefore ordered that David Calvillo is appointed Receiver to take charge and possession of the business property and entities and the underlying properties (whether said properties are held in the name of the entities, the names of the parties individually or in the name of third parties) including but not limited to those described in Exhibit A hereto and incorporated herein by reference and the records thereof at all business locations of the entities or wherever such records may be found, including financial institutions.
> … It is further ordered that David Calvillo is authorized to manage, control, and dispose of the property as he sees fit in his sole discretion.

---

[4] Texas Rule of Civil Procedure 301 states that "[o]nly one final judgment shall be rendered in any cause except where it is otherwise specially provided by law."

(ECF No. 6-1 at 11).  By its very terms, the order contemplated as-of-yet undetermined action to be taken by Calvillo.  Calvillo was authorized to take possession, manage, and control the Domits' various business entities, but the order gave essentially no guidance as to what specific action should be taken.  Because the order did not purport to finally dispose of any issue with regards to the receivership, it was interlocutory and accordingly subject to collateral attack.

Even if the receivership order could be considered final, the Trustee would still be allowed to collaterally attack the order.  The general rule regarding collateral attack is that a "civil decree cannot be collaterally attacked *by a party or a person in privity with a party*." *United States v. City of Chicago*, 870 F.2d 1256, 1260 (7th Cir. 1989) (emphasis in original). The Trustee was not a party to the divorce proceeding between Antun and Maria Domit.  Nor can the Trustee be considered a proxy for Ocean Tower, a partnership owned entirely by the Domits. A trustee does not share "an identity of interests in the basic legal right that is the subject of litigation" with the Debtor.  *Erlewine*, 349 F.3d at 210 (internal quotation marks omitted) (quoting *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996)).  While it is true that a trustee is in many respects a successor in interest of a debtor, a bankruptcy trustee is also a general representative of the creditors and is often required to take a position adverse to that of a debtor.  *Erlewine*, 349 F.3d at 210 (quoting *Coleman v. Alcock*, 272 F.2d 618, 621-22 (5th Cir. 1959).

In any event, Ocean Tower itself was not a party to the divorce and was not in privity with the Domits.  *See See In re Allcat Claims Serv., L.P.*, 356 S.W.3d 455, 463 (Tex. 2011) ("[U]nder the entity theory of partnership law the partnership is an entity separate and distinct from its partners. . . . Texas adheres to the entity theory.").  Because the Trustee was not a party

to the original state court proceeding, or in privity with a party, this adversary is not an impermissible collateral attack.

Although Movants do not specifically raise the issue, when a lower federal court hears a matter that is "inextricably intertwined" with a state proceeding, the *Rooker-Feldman* doctrine is potentially implicated.  The *Rooker-Feldman* doctrine, named after two Supreme Court cases[5], holds that inferior federal courts lack jurisdiction to exercise appellate review over state court decisions.  *Ingalls v. Erlewine (In re Erlewine)*, 349 F.3d 205, 209 (5th Cir. 2003).  Absent specific law providing otherwise, the doctrine holds that federal district courts may not entertain collateral attacks on state court judgments.  *Liedtke v. State Bar of Texas*, 18 F.3d 315, 317 (5th Cir. 1994).  If a state trial court errs, it should be reviewed and corrected by the appropriate state appellate court.  *Id.*

The *Rooker-Feldman* doctrine is confined to cases brought by state-court losers complaining of injuries caused by state-court judgments.  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).  The doctrine occupies "narrow ground."  *Id.*  A nonparty to the state court proceeding is not bound by the *Rooker-Feldman* doctrine.  *Johnson v. DeGrandy*, 512 U.S. 997, 1006 (1994) ("But the invocation of *Rooker/Feldman* is just as inept here, for unlike Rooker or Feldman, the United States was not a party in the state court.").  Furthermore, the doctrine is only implicated when there has been a final state court judgment which can be directly attacked.  *Reyna v. Deutsche Bank Nat'l Trust Co.*, 892 F.Supp.2d 829, 831 (W.D. Tex. 2012).  As discussed above, the Trustee is a nonparty to the state court proceeding and the receivership order was not final.  Accordingly, the *Rooker-Feldman* doctrine does not apply.

---

[5] *D.C. Ct. App. v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923).

*Judicial Immunity*

Movants argue that because Calvillo enjoys the immunity of the court that appointed him, any transfers he effectuated cannot be challenged.  Texas has adopted the functional approach in applying derived judicial immunity.  *Dallas County v. Halsey*, 87 S.W.3d 552, 555 (Tex. 2002). The functional approach looks to whether the official is intimately associated with the judicial process and if that person exercises discretionary authority comparable to that of a judge.  *Id.* at 554.

Calvillo is not a defendant in this adversary proceeding.[6]  Judicial immunity does not preclude a fraudulent transfer lawsuit here any more than *In re Besing* or *In re Erlewine*.  In both those cases a state court judge transferred property by means of a judgment.  *Besing*, 981 F.2d at 1492; *Erlewine*, 349 F.3d at 211-12.  The fact that the state court judges in question enjoyed judicial immunity had no bearing on the subsequent fraudulent transfer suits.  The Trustee can pursue this adversary regardless of whether Calvillo has judicial immunity.

Moreover, even if the concept of derived judicial immunity arises in some situations, it appears that Calvillo exceeded the scope of activity that may be performed by a Texas receiver. On August 26, 2014, the Texas State Commission on Judicial Conduct issued a Public Admonition of the state court judge who presided over the Domit divorce.  (ECF No. 32-1 at 3). During the investigation, the judge testified that he did not know how the receiver determined what amounts to disburse.  The judge further testified that the Domit divorce was his only experience with the law of receiverships.  Ultimately, the Commission concluded that the judge "failed to comply with the law . . . and demonstrated incompetence" by "grant[ing] the receiver, Calvillo, non-delegable judicial powers, including the unfettered authority to make payments . . . from the Ocean Tower settlement proceeds without any court oversight, approval, or

---

[6] Calvillo is a defendant in a related proceeding.

intervention." *Id.* at 5.  A court official can be subject to personal liability if for actions taken in the "clear absence of all jurisdiction." *Bradley v. Fisher*, 80 U.S. 335, 350 (1871).  Given the Commission's findings, it is doubtful that Calvillo enjoys derivative judicial immunity.

*Bankruptcy Code § 548*

    i.   Transfers Under § 548 of the Bankruptcy Code

    11 U.S.C. § 548 provides in part:

    (a)(1) The trustee may avoid any transfer . . . of an interest of the debtor in property . . . that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

        (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

        (ii) was insolvent on the date that such transfer was made, . . . or became insolvent as a result of such transfer or obligation.

The relevant definition of "transfer" for purposes of the fraudulent transfer provision of the Bankruptcy Code is found at § 101(54)(D). "The term 'transfer' means . . . each mode, direct or indirect, absolute or condition, *voluntary or involuntary*" of disposing or parting with property or an interest in property.  11 U.S.C. § 101(54) (emphasis added).  Congress intended the definition of transfer to be as broad as possible.  *Besing v. Hawthorne (In re Besing)*, 981 F.2d 1488, 1492 (5th Cir. 1993).  Because the definition of transfer expressly includes involuntary dispositions of property, dispositions of property brought about by a state judicial proceeding fall within its scope.  *Id* (holding that a state court judgment dismissing a tort claim was a transfer); *see also Erlewine*, 349 F.3d at 205 (divorce decree), *BFP v. Imperial Sav. & Loan Ass'n (In re BFP)*, 974 F.2d 1144 (9th Cir. 1992) (judicial foreclosure), *Butler v. Lomas & Nettleton Co.*, 862 F.2d 1015, 1019 (3d Cir. 1988) (judicial foreclosure), *Britt v. Damson*, 334 F.2d 896, 902 (9th Cir. 1964) (divorce decree).

Under Texas law, a receiver derives his authority from the trial court and has only those powers that the appointing court may confer on him.  *Congleton v. Shoemaker*, Case Nos. 09-11-00453-CV, 09-11-00654-CV, 2012 WL 1249406 at * 2 (Tex. App. Apr. 12, 2012) (citing *Knox v. Damascus Corp*, 200 S.W.2d 656, 659 (Tex. App. 1947).   A receiver must act only on the authority of the court appointing him.  *Id.*  Accordingly, when Calvillo transferred funds from the Receivership Account to Defendants, he acted under the authority of the Hidalgo County District Court.  To the extent the state court—through its agent Calvillo—caused Ocean Tower to part with an interest in property, it constituted a transfer within the meaning of § 548.

ii.   Reasonably Equivalent Value and Insolvency

The final two elements of a fraudulent transfer claim under § 548 are that the debtor received less than a reasonably equivalent value in exchange for the transfer and that the debtor was insolvent on the date of the transfers.  Because the Bankruptcy Code does not define the term reasonably equivalent value, the inquiry is fact-intensive.  *Besing*, 981 F.2d at 1494; *see also In re Dunham*, 110 F.3d 286, 289 (5th Cir. 1997) ("[W]hether fair consideration has been given . . . is largely a question of fact. . . .").  The Trustee alleges that Ocean Tower made a series of transfers to insiders while Ocean Towers was insolvent, and lists the specific amounts and dates of the transfers.  (ECF No. 1 at 4).  Movants make no arguments challenging the accuracy of these allegations.  The Domits were Ocean Tower's majority owners at the time of the transfers.  Godinez Office Center, Las Misiones Apartments, and South Ware Industrial are entities controlled by the Domits.[7]  These facts alone are sufficient to state a claim for fraudulent transfer under § 548 of the Bankruptcy Code.  *See Bilouris v. Sundance Res., Inc.*, 559 F. Supp. 2d 733, 736 (N.D. Tex. 2008).

---

[7] Maria Domit signed a motion to dismiss as the "Managing Member and signatory" for Las Misiones Apartments. (ECF No. 16 at 9).  Antun Domit has signed pleadings as General Partner for Godinez Office Center and South Ware Industrial.  (ECF No.

*Texas Uniform Fraudulent Transfer Act (TUFTA)*

The Trustee further alleges that the disputed transfers are avoidable under TUFTA. Section 544(b) of the Bankruptcy Code provides that "a trustee may avoid any transfer of an interest of the debtor in property . . . that is voidable under applicable [state] law by a creditor." It allows the trustee to step into the shoes of a creditor for the purposes of asserting causes of action under state fraudulent conveyance laws. *Asarco, LLC v. Americas Mining Corp.*, 404 B.R. 150, 156 (S.D. Tex. 2009). In order to state a claim for a fraudulent transfer under TUFTA, a creditor whose claim arose before the fraudulent transfer must allege that the transfer was made for less than reasonably equivalent value while the debtor was insolvent. Tex. Bus. & Com. Code § 24.006(a); *Bilouris*, 559 F. Supp. 2d at 736.

The issues of reasonably equivalent value and insolvency have been addressed above. Therefore, the only issues unique to Texas law are whether a transfer occurred and whether a creditor exists whose claims arose before the alleged fraudulent transfers. Using language that closely tracks the Bankruptcy Code's definition, TUFTA defines a transfer as "every mode, direct or indirect, absolute or conditional, *voluntary or involuntary*, of disposing or parting with an asset or an interest in an asset. . . ." Tex. Bus. & Com. Code § 24.002(12) (emphasis added). TUFTA's definition of 'transfer' is deliberately broad. *Trigent Holdings, Inc. v. Jones*, 183 S.W.3d 717, 726 (Tex. App. 2005). As under the Bankruptcy Code, the actions of a receiver acting under a state court order constitute a transfer under TUFTA.

Turning to the issue of a pre-existing creditor, the Court finds that such a creditor exists on whose benefit the Trustee can act. Each of the creditors who forced Ocean Tower into bankruptcy filed a proof of claim for $27,500. The debts arose from a condominium purchase agreement dated December 23, 2005. (Case No. 11-70776; ECF No. 13-1 at 8). Creditors

existed before the first transfer on February 23, 2009.  The Trustee has stated a claim under § 24.006(a) of the Texas Business and Commerce Code.

## Conclusion

The Trustee has pled sufficient facts to state a claim for relief under § 548 of the Bankruptcy Code and § 24.006(a) of the Texas Business and Commerce Code.  Accordingly, the Defendants' motions to dismiss are denied.  The Court will issue an order consistent with this memorandum opinion.

SIGNED **November 25, 2014.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE